UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREENFIELD FRESH, INC., <br><br> Plaintiff, <br><br> v. <br><br> BERTI PRODUCE-OAKLAND, INC., <br><br> Defendant. | Case No. 14-cv-01096-JSC <br><br> **ORDER RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 39 |

Plaintiff Greenfield Fresh, Inc. brought claims against Berti Produce-Oakland, Inc. ("Berti Produce" or "Defendant"), Raymond Mah, and Henry Chow for violations of the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a-t (the "PACA"), and for breach of contract. (Dkt. No. 1.) Plaintiff executed service of summons on Berti Produce through the company's agent for service of process, Henry Chow. (Dkt. No. 13.) The Court subsequently dismissed all claims against Raymond Mah and Henry Chow pursuant to stipulation by the parties. (Dkt. No. 36.) Berti Produce, the only remaining defendant in this action, has not made an appearance, settled, nor filed consent, and its default has been entered. (Dkt. No. 31.) Now pending is Plaintiff's Motion for Default Judgment against Berti Produce on all claims pleaded in the Complaint. After carefully considering Plaintiff's submission, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and orders as follows.

## BACKGROUND

Plaintiff is a wholesale supplier of perishable agricultural commodities with offices located in Walnut Creek, California. (Dkt. No. 1, ¶¶ 1-2.) Defendant is a California company located in Oakland, California, formerly operating under a valid PACA license.[1] From November 22, 2013

---

[1] *See Search PACA*, USDA Agricultural Marketing Service Fruit and Vegetable Programs, http://apps.ams.usda.gov/pacasearch/SearchDetails.aspx?License_ID=0303&License_FY=2000.

through January 20, 2014, Plaintiff sold Defendant various items of produce. *Id.* at Ex. A. Plaintiff provided Defendant invoices for each shipment, all of which contain the following statement:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by Section 5 (C) of the Agricultural Commodities Act of 1930 (7 U.S.C. 499e (C)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities until full payment is received.

*Id.* The invoices also require Defendant to pay for interest on "past-due account balance[s] at the rate of 1.5% per month (18% APR)" and "all costs of collection, including attorney's fees." *Id.*

Defendant never paid Plaintiff for any of the produce it received. (Dkt. No.1, ¶¶ 12-13.) The total price of the produce delivered was $25,391.25. *Id* at Ex. A. Plaintiff seeks default judgment against Defendant in the total amount of $63,718.32, representing the total amount of produce delivered plus prejudgment interest, costs, and attorney's fees.

**DISCUSSION**

**I.     Jurisdiction and Service of Process**

When a court is considering whether to enter a default judgment it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999). Here, Plaintiff alleges that Defendant has violated several sections of the PACA, a federal statute. Thus, the action arises under the laws of the United States, and the Court may exercise subject matter jurisdiction over the dispute pursuant to 28 U.S.C. § 1331. The Court has personal jurisdiction over Berti Produce-Oakland because it is a California corporation that engages in business activities in the Northern District of California.

A court is also required to "assess the adequacy of the service of process on the party against whom default is requested." *Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters*, No. 00-0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Federal Rule of Civil Procedure 4(e) provides that service in accordance with California law is proper. Under California law, a corporation may be served by delivering a copy of the summons and of the complaint to the person designated as agent for service of process. *See* Cal. Civ. P. Code 416.10(a). Here, Berti Produce's agent for service of process was personally served with the Summons and Complaint.

2

(Dkt. No. 13.)

## II. Default Judgment

After entry of default, a court may grant default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. The factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court should consider the following factors in determining whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The Court will discuss these factors in turn.

The majority of the *Eitel* factors support default judgment. First, if the Motion were to be denied, then Plaintiff would likely be left without a remedy given Berti Produce's entry of default. *See PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Second, because Defendant has not responded to this lawsuit, it is unknown whether there is a possibility of dispute concerning material facts. Third, there is no evidence in the record that Berti Produce's failure to respond to this lawsuit was due to excusable neglect. This action was filed over seven months ago and Defendant's agent for service of process was properly served. *See Church Bros., LLC v. Garden of Eden Produce, LLC*, No 5:11-cv-04114 EJD, 2012 WL 1155656, at *3 (N.D. Cal. April 5, 2012). Fourth, the sum of money being sought by Plaintiff is reasonable in that it is tailored to the specific misconduct of Berti Produce; namely, Plaintiff seeks to recoup the amount of damages incurred when Berti Produce failed to pay for produce delivered pursuant to the PACA trust, plus prejudgment interest at the contract rate of 1.5% per month. *See PepsiCo,* 238 F. Supp. 2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Plaintiff alleges this amount totals $28,718.32. Finally, although the seventh *Eitel* factor which favors decisions on their merits weighs against default

judgment, the Court finds that this factor is not dispositive.

Having determined that on balance the *Eitel* factors discussed above support Plaintiff's Motion, the Court turns to the merits of Plaintiff's substantive claims and the sufficiency of the evidence (the second and third *Eitel* factors). These factors essentially required Plaintiff to state a claim on which it may recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

### A.  PACA

The PACA gives suppliers of perishable commodities special rights to ensure payment. *C.H. Robinson Co. v. Marina Produce Co., Inc.*, No. C-05-04032 WHA, 2007 WL 39311, at *2 (N.D. Cal. January 4, 2007). It provides for the establishment of a statutory trust "in which a produce dealer holds produce-related assets as a fiduciary until full payment is made to the produce seller." *In re San Joaquin Food Serv., Inc.*, 958 F.2d 938, 939 (9th Cir. 1992) (internal citations omitted). "The trust automatically arises in favor of a produce seller upon delivery of produce and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing has been received." *Id.* Under the PACA, it is unlawful "[f]or any commission merchant, dealer, or broker to . . . fail or refuse truly and correctly to account and make full payment in respect of any transaction in any [perishable commodity] to the person with whom such transaction is had . . . or fail to maintain the trust as required." 7 U.S.C. § 499b(4).

To establish a claim under the PACA, a plaintiff must establish:

> (1) the commodities sold were perishable agricultural commodities, (2) the purchaser was a commission merchant, dealer, or broker, (3) the transaction occurred in contemplation of interstate or foreign commerce, (4) the seller has not received full payment on the transaction, and (5) the seller preserved its trust rights by including statutory language referencing the trust on its invoices.

*Beachside Produce, LLC v. Flemming Enterprises*, *LLC*, No. C-06-04957 JW, 2007 WL 1655554, at *2 (N.D. Cal. June 6, 2007) (citing 7 U.S.C. § 499e(c)(3),(4); 7 C.F.R. § 46.46(c), (f)).

Plaintiff alleged facts supporting the creation of a trust and a breach of that trust under 7 U.S.C. § 499(b)(4) by Berti Produce. Plaintiff claims to have sold perishable produce to Defendant who was a dealer, and that Plaintiff has not received full payment. (Dkt. No. 1, ¶¶ 4-13.) Plaintiff has complied with PACA's notice requirement under 7 U.S.C. 499e(c)(4) by submitting invoices including the requisite statutory language. *See id.* at Ex. A. Regarding the requirement that the transaction occurred in contemplation of interstate commerce, courts have

4

held that this element is satisfied where "the commodities involved are the type typically sold in interstate commerce" and where the seller involved is "the type that Congress intended to protect by implementing PACA." *Oregon Potato Co. v. Seven Stars Fruit Co., LLC*, 2013 WL 230984, at *5 (W.D.Wash. Jan. 22, 2013) (quoting *In re Southland + Keystone*, 132 B.R. 632, 640–41 (9th Cir. BAP 1991)). Although Plaintiff has not specifically alleged that the various produce sold to Defendant are typically sold in interstate commerce, Plaintiff has alleged that, generally, it sells produce in interstate commerce (Dkt. No. 1 ¶ 2), thus conveying that the produce it sells are the type typically sold in interstate commerce. Because Plaintiff has sufficiently stated a claim under the PACA against Defendant, Plaintiff has satisfied the second and third *Eitel* factors.

### B. Breach of Contract

Plaintiff has also states a claim for breach of contract. The elements of a breach of contract claim under California law are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal.2d 822, 830 (1968). Here, Plaintiff has alleged the contract, its performance of the contract, Defendant Berti Produce's breach of the contract, and damages. (Dkt. No. 1, ¶¶ 25-28.) The Court finds this is legally sufficient to entitle Plaintiff to judgment against Berti Produce on the claim of breach of contract. *See Paramount Citrus Co-op., Inc. v. H & M Produce Inc.*, No. 1:08-cv-01210-AWI-SMS, 2008 WL 4716764 at *5 (E.D. Cal. October 24, 2008) (internal citations omitted).

### III. Damages and Prejudgment Interest

Under the PACA, merchants who violate its provisions "shall be liable to the person or persons injured thereby for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e(a). Plaintiff is therefore entitled to the full value of the delivered produce, or $25,391.25, which is alleged in the Complaint and supported by the invoices attached thereto. (Dkt. No. 1, Ex. A.)

Plaintiff also requests prejudgment interest at the contract rate of 1.5% per month (18% APR). Pursuant to *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1224-26 (9th Cir. 2002), prejudgment interest may be included in a PACA trust claim if supported by a contractual right; otherwise, the court retains discretion to award reasonable

5

prejudgment interest. The issue, then, is whether a contractual right was created by the provisions in Plaintiff's invoices stating that "[i]nterest shall accrue on any past-due account balance at the rate of 1.5% per month (18% APR)." (Dkt. No. 1, Ex. A.) The Court in *Middle Mountain* declined to determine whether an invoice created a contractual right to prejudgment interest and attorney's fees in a PACA case, but rather remanded that issue to the district court. 307 F.3d at 1225. However, in other contexts, the Ninth Circuit has determined that terms expressed in an invoice for the sale of goods impose contractual duties. *See United States ex rel. Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters.*, 74 F.3d 972, 976 (9th Cir. 1996) (awarding concrete suppliers prejudgment interest at 1% per month based on the contractual terms set forth in the suppliers' invoices). Moreover, several district courts within this Circuit have imposed contractual obligations as to terms, including prejudgment interest, first expressed in invoices preserving a PACA trust. *See e.g. C.H. Robinson Co.*, 2007 WL 39311, at *4; *see also Henry Avocado Corp. v. Polo's Produce, Inc.*, No. 1:10-cv-01298 AWI JLT, 2010 WL 4569136, at *4-5 (E.D. Cal. Nov. 3, 2010); *Church Bros., LLC*, 2012 WL 1155656, at *3; *Underwood & Wong, Inc. v. Enriquez*, No. 2:09–cv–1686 MCE JFM, 2010 WL 2889745, at *2, *4 (E.D. Cal. July 21, 2010).

The Court finds that the language pertaining to prejudgment interest in Plaintiff's invoices was sufficient to create a contractual right to collect those amounts at a rate of 1.5 percent per month. However, Plaintiff neither specifically lists the total amount of prejudgment interest it is now seeking nor supports its request with any adequately explained calculation; rather, Plaintiff provides documentation supporting only an interest calculation as of February 25, 2014. (See Dkt. No. 39-1, Ex. A p.1.) The Court therefore orders Plaintiff to provide an updated calculation of the prejudgment interest owed by Defendant if Plaintiff wishes to be awarded such interest.

**IV.   Costs and Attorneys' Fees**

    **A.   Legal Standard**

"[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001) (internal quotation marks omitted); *see also Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ("The 'lodestar' is calculated by multiplying the number of hours the prevailing party

reasonably expended on the litigation by a reasonable hourly rate.").

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210—11 (9th Cir. 1986), *amended on other grounds by* 808 F.2d 1373 (9th Cir. 1987). The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin.*, *Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

In determining a reasonable amount of time spent, the Court should only award fees based on "the number of hours reasonably expended on the litigation" and exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). "There is no precise rule or formula for making these determinations." *Id.* at 436. "The court necessarily has discretion in making this equitable judgment." *Id.* at 437.

**B.    Analysis**

Plaintiff seeks attorney's fees and costs based on the following language contained in the invoices: "[b]uyer agrees to pay all costs of collection, including attorney's fees." The Court concludes that "Plaintiff may recover attorney's fees and costs based on the same contract created by the invoices." *Church Bros., LLC*, 2012 WL 1155656 at *3; *see also Middle Mountain Land and Produce Inc.*, 307 F.3d at 1224; *C.H. Robinson Co.*, 2007 WL 39311 at *4. However, Plaintiff's submissions in support of their request for attorney's fees and costs are insufficient to support such an award.

Attached to the declaration of Michael J. Keaton, Plaintiff's attorney, is a billing statement that was prepared by Mr. Keaton. (Dkt. No. 39, Ex. B.) This billing statement is not sufficient evidence to provide a proper basis for the Court to determine a reasonable amount of attorney's fees and costs to award. First, among the hours for which Plaintiff seeks compensation is work performed in connection with the two alleged principals of Berti Produce, Raymond Mah and Henry Chow, who were defendants in this action before they were dismissed in September 2014. Plaintiff does not cite to any authority for the proposition that its contractual right to collect attorney's fees from Berti Produce also extends to work performed in connection with co-defendants. At least one court has rejected such a request under similar contract language. *See In*

7

*re J K Farms, Inc.*, 458 B.R. 636, 641 (Bankr. D.D.C. 2011) ("To expand the reading of the attorney's fee clause in the invoices to encompass independent statutory and common law actions against third parties stretches the provision too far. Rather, for actions against third parties, one would expect to see an indemnity clause."). Plaintiff is accordingly ordered to provide a supplemental brief in support of its request for attorney's fees and costs that addresses its asserted right to fees and costs incurred in its prosecution of claims against co-defendants. It should also submit an alternative calculation of fees and costs owed should the Court conclude that Plaintiff may not recover fees and costs incurred in prosecuting claims against the co-defendants.

Second, Plaintiff provides only estimates for the compensation it seeks for attorney's fees incurred in the months of August and September of 2014. Such estimates are inadequate to demonstrate reasonable attorney time. Plaintiff is therefore ordered to submit an updated billing statement for these months.

Next, many of the entries in Plaintiff's counsel's billing records are redacted, thus precluding the Court from assessing the reasonableness of the fees sought. While some of the entries appear to be redacting attorney-client privileged material, if the Court concludes that Plaintiff may not recover fees and costs incurred in prosecuting the action against the co-defendants, the redactions conceal the purpose of the entries. Thus, if Plaintiff seeks attorney's fees for those entries, it must provide the Court with unredacted copies of the records. Plaintiff may move to file the entries under seal—with narrowly tailored redactions—if it believes such records are sealable under Civil Local Rule 79-5 and does not need to share them with counsel for the co-defendants. The redactions also include entries made on each invoice after the invoice totals the amount owed. Plaintiff must submit a declaration that explains the redactions; they may not be relevant, but the Court cannot make that determination without some explanation from Plaintiff.

Finally, the Court finds that the billing statement attached to Mr. Keaton's declaration is insufficient to the extent it refers to unverified "local counsel fees," which Plaintiff classifies as costs. (Dkt. No. 39-2, Ex. A.) Plaintiff fails to provide any explanation as to why these attorney's fees should be considered costs. Further, Plaintiff fails to provide the required detailed billing records in support of these fees. Plaintiff must provide a more detailed account of these charges

and explain why a "markup of 15 percent" to cover "administrative time" is reasonable. (Dkt. No. 39-2 at ¶ 6.)

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff is entitled to default judgment against Defendant on its PACA and breach of contract claim. The Court further concludes that Plaintiff is entitled to $25,391.25 in damages, representing the principal amount owed by Defendant. Plaintiff has not demonstrated, however, that it is entitled to the full amount of fees and costs it seeks. Plaintiff is therefore ordered to provide supplemental briefing on the following items: (1) an updated total amount of prejudgment interest; (2) its right to collect attorney's fees and costs in connection with services rendered for two dismissed co-Defendants; (3) the actual amount of attorney's fees incurred in August and September of 2014 and; (4) the costs assessed as local counsel fees. Plaintiff shall file its supplemental brief and supporting papers by no later than 10 days from the date of this Order.

**IT IS SO ORDERED**.

Dated: November 3, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge